**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Fotios Moustakas, | |
|     Plaintiff, | |
|     v. | No. 14 C 9294 |
| | Judge James B. Zagel |
| Jeremy Margolis, et al., | |
|     Defendants. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendants' Motion is granted in full.

## I. BACKGROUND

Plaintiff Fotios Moustakas, under the Firearm Concealed Carry Act, applied for but was denied a license to carry a concealed weapon. 430 ILCS 66/1, *et seq*. Plaintiff then filed this suit on November 19, 2014 against the agents of the Illinois Concealed Carry Licensing Review Board and agents of the Illinois State Police ("ISP"), pursuant to 42 U.S.C. § 1983. Plaintiff alleges violations of his procedural due process and Second Amendment rights, and seeks both preliminary and permanent injunctions.

### A. History of Concealed Carry Regulations in Illinois

On December 11, 2012, the Seventh Circuit invalidated the Illinois Unlawful Use of Weapons (UUW) and Illinois Aggravated Unlawful Use of a Weapon (AUUW) laws, finding the laws' prohibitions against carrying a concealed weapon outside the home to be violations of the Second Amendment. *Moore v. Madigan*, 702 F.3d 933, 934, 942 (7th Cir. 2012), *rehearing*

*den'd* 708 F.3d 901 (7th Cir. 2013). The Seventh Circuit stayed its decision for "180 days to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment . . . on the carrying of guns in public." *Id.* at 942. Accordingly, the Illinois Legislature passed the Illinois Firearm Concealed Carry Act ("the Act"), which went into effect on July 9, 2013. 430 ILCS 66/1, *et seq*. The Act mandated that the State Police issue a license to carry a concealed firearm to any applicant who submits requisite documentations and fees and meets certain statutory qualifications.[1]

The relevant statutory qualification in this case is the requirement that the applicant "does not pose a danger to himself, herself, or others, or a threat to public safety." 430 ILCS 66/10(a); *Id.* at 66/10(c). Under the old law, law enforcement agencies evaluating an applicant's dangerousness reviewed their own records and the State Police database. If those records raised "a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety," law enforcement agencies could file an objection to the Illinois Concealed Carry Licensing Review Board ("the Board"). 430 ILCS 66/15(a). The Board then voted on the applicant's eligibility to obtain a concealed carry license ("CCL") based on materials from the objecting law enforcement agency and any additional information that was requested or provided by the applicant. An applicant whose CCL was denied could seek judicial review in state courts under the Illinois Administrative Review Act. 430 ILCS 66/87; *see also* 735 ILCS 5/3–101 *et seq*.

Prior to Plaintiff's filing this lawsuit, the Illinois State Police promulgated a series of "Emergency Amendments" that modified the procedure for considering objections. 20 Ill. Admin Code § 1231.230 (2014). Under the revised procedure, which went into effect on July 10, 2014,

---

[1] One requirement is that the applicant possesses a valid Firearm Owner's Identification Card ("FOID Card"), which allows an Illinois citizen to possess, own, purchase, or otherwise acquire firearms and ammunitions. Prospective gun owners submit FOID applications to the ISP, which runs background checks before issuing the card.

the Board "shall send the applicant notice of the objection, including the basis of the objection and the agency submitting the objection, within ten calendar days." *Id.* at § 1231.230(e). The applicant may then respond with "any additional material that the applicant wants [the Board] to consider." *Id.* If the Board cannot come to a decision based solely on written submissions from the parties, it conducts a hearing at which both parties may testify. *Id.* at § 1231.230(c). The Board is required to notify the applicant of the date, time, and location of any hearing. *Id.* at § 1231.230(d).

**B. Moustakas' CCL Application**

Plaintiff applied for a CCL in January 2014 before the Emergency Amendments were put in place. During the review process, a law enforcement agency raised an objection that led the Board to deny Moustakas' application in light of his failure to meet the public safety requirement. Under the then-operative law, the Board was not required to—and did not—notify Moustakas of the objection or request additional evidence from him. The denial came without further explanation.

Instead of availing himself of the revised review process, Plaintiff filed this lawsuit alleging that Defendants violated Plaintiff's Second Amendment right to keep and bear arms as well as his Fourteenth Amendment due process rights. Defendant moved to dismiss on January 26, 2015. Plaintiff then filed a series of amended complaints, culminating in the Third Amended Complaint on May 8, 2015. Defendants renewed their Motion to Dismiss on May 29, 2015, and it is this motion that is presently before the court.

In his Third Amended Complaint, Plaintiff states six causes of actions. Specifically, Plaintiff alleges that the Board's procedure denied him adequate notice and opportunity to be heard (Count I); that the Board erroneously evaluated his application under a preponderance of

the evidence standard when at least a clear and convincing evidence standard was called for (Count II); and that the Board failed to provide him with the nature, degree, immediacy, or character of the "danger or threat" it felt he posed (Count III). Furthermore, Plaintiff claims that the CCL process itself is an excessive burden that is made redundant by the separate FOID card requirement (Count IV). Plaintiff also complains that the makeup of the Board, which expressly requires that five of its seven members have substantial law enforcement backgrounds or experience as government attorneys, ensures a bias against certain CCL applicants (Count V). Finally, Plaintiff argues that the CCL application process is a prior restraint on his Second Amendment rights (Count VI).

Defendants move to dismiss all claims for failure to state a claim under Rule 12(b)(6) and for lack of jurisdiction under Rule 12(b)(1) and *Younger v. Harris*.

## II. STANDARD OF REVIEW

A 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. In considering such a motion, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the Plaintiff. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). The complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "liberal notice pleading regime . . . is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 514 (2002)).

That being said, the pleading standard nonetheless demands that the allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed a complaint that survives a Rule 12(b)(6) motion "must

contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes removed).

A motion based on standing pursuant to Federal Rule of Civil Procedure 12(b)(1) is subject to the same pleading standard. *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 256–57 (N.D. Ill. 1992). However, Plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that the Plaintiff has the burden of establishing the requirements of standing).

## III. DISCUSSION

### A. *Younger* Abstention

Defendants move to dismiss Moustakas' as-applied procedural due process claim (Count I) for lack of jurisdiction pursuant to *Younger v. Harris*. *See Younger v. Harris*, 401 U.S. 37, 43–44 (1971). Defendants have unsuccessfully raised this argument in similar cases before my colleagues. *See Berron v. Ill. Concealed Carry Licensing Review Bd.*, No. 14 CV 2839, 2015 WL 1275834, at *4 (N.D. Ill. March 16, 2015); *Bolton v. Bryant*, 71 F. Supp. 3d 802, 813–815 (N.D. Ill. 2014). I agree with my colleagues' analysis and find that *Younger* abstention is not warranted in this case.

*Younger* requires federal courts to abstain from adjudicating constitutional claims "that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Ind.*, 502 F.3d 590, 595 (7th Cir. 2007) (citing *Younger*, 401 U.S. at 43–44). But "[t]he mere fact that a case *could* be heard in state court" does not warrant the abstention. *Village of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008). Here, since Moustakas did not appeal the denial

of his CCL, there is no pending state court proceeding that could be disrupted by this federal case.

Nonetheless, Defendants allege that *Younger* abstention applies even though there is no on-going state court litigation. In *Nelson v. Murphy*, the Seventh Circuit held that "parties may not avoid *Younger* by withholding defenses from the state proceeding and commencing the federal suit." *Nelson v. Murphy*, 44 F.3d 497, 501-02 (7th Cir. 1995). There the court was concerned that a party already involved in state litigation would intentionally fail to raise constitutional claims in the state court proceeding if they were dissatisfied with the state court's relief in other, similar cases. The court was concerned that a federal court's intervention could deprive the State of its right to decide constitutional issues over which it had jurisdiction. *Id.* But *Nelson* is distinguishable from the present case because Moustakas has not participated in any state court proceeding where he had an opportunity to raise constitutional claims. The CCL review process is administrative and does not afford a forum for constitutional issues. Therefore, *Nelson* is inapplicable here.

Defendants also argue that the Board's denial of Plaintiff's CCL was a civil enforcement proceeding—where *Younger* may apply—because it involved a law enforcement agency raising an objection against an individual. This misconstrues the narrow scope of *Younger*. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014) (holding that *Younger* is warranted only in "exceptional situations"). When a federal court abstains under *Younger* out of deference for civil enforcement proceedings, it does so only when the state proceedings are "akin to criminal prosecutions in important aspects," including whether or not the proceeding was state-initiated. *Spring Commuc'ns, Inc. v. Jacobs,* 134 S.Ct. 584, 586, 588, 590 (2013) (internal quotes omitted). Where, as here, the Plaintiff himself initiated the

"proceeding" by applying for a CCL, which then prompted a state agency to raise objections to his qualifications, the proceeding is insufficiently similar to a criminal prosecution. For these reasons, I will not abstain from exercising jurisdiction in this case.

## B. The 12(b)(1) Jurisdictional Claims

### 1. Mootness

Plaintiff challenges the Board procedure both facially, as a violation of applicants' Second and Fourteenth Amendment rights, and as applied to Plaintiff himself. Defendants argue that the amended regulations, which were not yet implemented when Plaintiff went through the application process, moot Plaintiff's as-applied procedural due process claim.

Federal courts only have jurisdiction over live cases and controversies. U.S. Const. art. III; *Damasco v. Clearwire Corp.*, 662 F.3d 891, 894 (7th Cir. 2011). The parties must therefore "maintain a personal stake in the outcome at all stages of the litigation." *Damasco*, 662 F.3d at 895. A case becomes moot when "a party with standing at the inception of litigation loses it due to intervening events." *Pavarti Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). One such instance is when the "repeal of a contested ordinance moots a plaintiff's injunction request." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 930 (7th Cir. 2003). *Cf. id.* at 930–32 (showing that a policy change may moot injunctive and declaratory judgment claims, i.e. prospective relief, even if it may not moot a damages claim).

Under the procedure in place at the time of Plaintiff's CCL application, the applicant did not have the right to notice or to file a response to an objection. In Plaintiff's case, the Board did not inform him that an objection was filed until March 19, 2014, when he was informed by mail that his CCL application had been denied for failure to meet the public safety requirement. Plaintiff did not know which law enforcement agency had objected to his application or the basis

for the objection. Plaintiff also did not have the opportunity to file a written response. While the Board had discretion to request more information from the applicant, they did not do so in this case.

However, in contrast to the procedure at the time of Plaintiff's application, the new amendments speak directly to Plaintiff's complaints by providing applicants with notice of pending objections to their applications and opportunities to be heard once those objections have been raised. Under the new procedure, the Board must "send the applicant notice of objection, including the basis of the objection and the agency submitting the objection." The applicant may then choose to submit additional material for the Board to consider. Since this new procedure provides specific correctives for each of the defects in Plaintiff's complaint, the as applied procedural due process claim with respect to the now defunct procedure (Count I) is moot. *See Burbank v. Twomey*, 520 F.2d 744, 748 (7th Cir. 1975) (mooting a plaintiff's claim when new regulations "provide[d] all the relief he requested.").

Plaintiff, however, argues that the case is not moot because Defendants promulgated the modified regulations in order to resolve the lawsuits filed in this District. It is true that a policy change motivated solely by a desire to resolve litigation does not moot a case. *Aurora Educ. Assoc. East, et al. v. Bd. of Educ. of Aurora Pub. Sch. Dist. No. 131 of Kane County, Ill.*, 490 F.2d 431, 437 (7th Cir. 1973). A case is mooted only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 170 (2000). The party asserting mootness (here, the Defendants) has the "heavy burden of persuading the court" that "the challenged conduct cannot reasonably be expected to recur." *Id.*

However, "[w]hen the defendants are public officials . . . we place greater stock in their

acts of self-correction, so long as they appear genuine." *Fed'n of Adver. Indust. Representative, Inc.*, 326 F.3d at 929. In this case, the Illinois State Police, which promulgated the Emergency Amendments, is entitled to deference. Moreover, they demonstrate a genuine commitment to correcting the deficits of the old policy by codifying and implementing the new procedure, which, as of this writing, has been in place for over a year. On the other hand, Plaintiff's argument that Illinois will revert back to the old licensing procedure is speculative and cannot overcome a mootness challenge. *Burbank*, 520 F.2d at 747–48.

Plaintiff next contends that the new procedure provides "some" remedy but ultimately an inadequate one. I disagree. Because the new rule explicitly provides for notice and the opportunity to be heard, the absence of which formed the core of Plaintiffs as applied procedural due process claim, I conclude that Count I is moot.

### 2. Ripeness

Cases are not ripe where the allegations are "hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). *See Unity Ventures v. Lake Cnty.*, 841 F.2d 770, 775 (7th Cir. 1988) (holding that a constitutional challenge to a municipal decision was "not ripe for adjudication" without a final decision from a governmental entity). Here the Plaintiff has not applied for and been denied a CCL since the procedural change in July 2014. At present, because Plaintiff has not reapplied for a CCL under the new procedure, his as-applied procedural due process claim regarding the new regulation (Count I) is hypothetical and therefore unripe. *See DeServi v. Bryant*, No. 14 C 3881, 2015 WL 3856109, at *3 (N.D. Ill. June 19, 2015) (suggesting that the plaintiff who challenges the revised CCL review procedure but had not applied for CCL under the amended Illinois rules has an unripe claim).

### 3. Standing

In order to demonstrate standing, Plaintiff must "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting *Lujan*, 504 U.S. at 560–61). The Plaintiff has the burden of demonstrating the existence of standing. *Retired Chi. Police Assoc. v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996). For two of his claims, Board bias (Count V) and redundancy and excessive burden (Count IV), the Plaintiff is unable to establish standing before this Court.

Plaintiff cannot establish standing for his Board bias claim because the alleged injury is "conjectural or hypothetical," not "actual or imminent." *Lujan*, 504 U.S. at 560. Plaintiff alleges that the statutory criteria for Board membership invariably creates a biased Board. In particular, two of the Board members must have at least five years' experience with the United States Department of Justice and three members must have at least five years' federal employment or investigative experience with United States law enforcement agencies. Plaintiff asserts that these members will naturally bring a pro-government bias to their review of any objections raised by law enforcement, in effect prejudicing the Board in favor of the objecting agency.

But "the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). A party is entitled to a presumption of "honesty and integrity" absent clear evidence to the contrary. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 872 (2009). This is a fact-specific inquiry that turns on factors such as whether the adjudicator has a "personal stake" in the proceeding's outcome. *DeServi*, 2015 WL 3856109 at *4. Here Plaintiff has cited no facts that raise an inference of personal bias among the Board in general or the specific members who evaluated his application.

Nor has he raised any clear evidence to rebut the presumption of honesty and integrity. Instead, Plaintiff states an unsupported theory that Board members who have worked in government would "oppose[] firearm ownership by ordinary, law-abiding citizens." Plaintiff has therefore failed to seek a remedy for a "personal and tangible harm," without which this court does not have authority to hear his case. *Hollingsworth*, 133 S. Ct. at 2661.

In addition to being too speculative, Plaintiff's alleged injury is also too general. In cases such as these where the alleged injury is "a generally available grievance about government," there is no Article III case or controversy. *Hollingsworth*, 133 S.Ct. at 2662. Since Plaintiff cannot show how he himself was harmed by an allegedly biased Board, but rather asserts a general grievance against the Board's composition, Count V is dismissed for lack of standing.

Likewise, Count IV also asserts a "generally available grievance about government." *Id*. In Count IV, Plaintiff argues that the CCL procedure is redundant to the FOID application process and the CCL application fee is an "excessive burden" to the public. In doing so, Plaintiff offers no specific evidence suggesting that the fee excessively burdened Plaintiff himself. As with the bias complaint, Plaintiff seeks relief "that no more directly and tangibly benefits him than it does the public at large," and as such, he does not demonstrate an Article III case or controversy. *Lujan*, 504 U.S. at 573-74.

With regard to the redundancy argument, Defendants correctly point out that the FOID Act and Concealed Carry Act can coexist because they implicate different rights and interests. While the FOID Act is concerned with the right to possess a firearm at all, the Concealed Carry Act concerns the separate issue of whether a firearm owner can carry one in public. This is concordant with the State's ability to impose "reasonable limitations, consistent with the public

safety and the Second Amendment," that the Seventh Circuit contemplated in *Moore v. Madigan*. 702 F.3d at 942.

Finally, I note that the standing inquiry is "especially rigorous" when the complaint is against "an action taken by one of the other two branches of the Federal Government." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997). This Court will not attempt to second guess the State Legislature's wisdom in imposing the CCL application fee or choosing to enact both the FOID Act and Concealed Carry Act to address different dimensions of firearm ownership.

## C. Procedural Due Process

Moustakas does, however, have standing to bring a facial challenge to the new review procedure that was enacted under Emergency Amendments. Here Plaintiff raises issues related to the constitutionality of an administrative procedure. Since the adjudication of this claim would not require "further factual development," Plaintiff's facial challenge to the CCL review proceedings is "ripe for adjudication." *Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247 (7th Cir. 1983).

Since the *Moore* decision, the proper balance between safeguarding Illinois citizens' Second Amendment rights and regulating gun ownership so as to provide for public safety has included the right to carry concealed weapons outside the home. *Moore*, 702 F.3d at 942. In attempting to strike this balance, the Illinois legislature is constrained by federal Constitutional due process requirements, the core of which is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation and citation omitted). Courts weigh three factors when determining what process is due: "1) the nature of the private interest affected by the state action; 2) the risk of an erroneous deprivation together with the value, if any, of the imposition of additional procedural safeguards;

and 3) the state's interest." *Becker v. Ill. Real Estate Admin. & Disc. Bd.*, 884 F.2d 955, 958 (7th Cir. 1989) (citing *Eldridge*, 424 U.S. at 335).

## 1. The Nature of the Private Interest Involved

I do not regard the first factor to be significant under the circumstances. To be sure, Moustakas' interest in protecting himself and his family from "serious criminal aggression" is significant. His particular interest in the right to carry and use a gun outside his home, however, involves speculative, hypothetical, and unproven threats to his and his family's lives. The fact that the Plaintiff "lives, works, and travels in a densely populated metropolitan area with high rates of crime," does not create a probable threat to Plaintiff's life. Instead, Plaintiff has a private interest in exercising his Second Amendment right to carry a weapon in public for self-defense. *See Moore*, 702 F.3d at 942. This is a protected property interest not linked to his livelihood. *Berron*, 2015 WL 1275834, at *5. Given that the interest at stake here is property, not life, I find that Plaintiff's private interest in carrying a concealed weapon is not a significant one.

## 2. The Risk of Erroneous Deprivation

The second factor evaluates the risk that an erroneous deprivation might occur. I find that the risk of erroneous deprivation here is low, especially under the modified procedure that provides applicants with an opportunity to counter and respond to any objections. *See Berron*, 2015 WL 1275834, at *6. Under the new regulation, an applicant whose application has been flagged for an objection receives a notice listing the name of the objector and the basis of the objection. The applicant also has an opportunity to respond to the agency's objection and may appeal the decision in state court. Typically, due process is satisfied by "a predetermination opportunity to respond, coupled with post-termination administrative procedure." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985). The new regulation, which provides both

notice and opportunity to be heard, provides the procedure that is due to a CCL applicant seeking to access a law enforcement objection.

Plaintiff nonetheless argues in Count II that the new provisions for notice and opportunity to be heard do not fully satisfy due process, and that the Constitution also requires a clear and convincing evidence standard when assessing whether an applicant fails the public safety requirement. It should be noted that the Constitution does not require the implementation of every procedural modification that could conceivably help cure a defect. Even though additional procedural protection need not provide "certain success," the Plaintiff does need to show how the added protection "plausibly would have prevented an erroneous deprivation." *Clancy v. Office of Foreign Assets Control*, 559 F.3d 595, 601 (7th Cir. 2009).

The right to possess a firearm outside one's home is subject to the state's police power for regulating firearm use. *See Moore*, 702 F.3d at 942 (mandating the State to "craft a gun law that will *impose reasonable limitations*, consistent with the public safety and the Second Amendment") (emphasis added). Therefore, even if the clear and convincing standard Plaintiff advocates would in fact decrease the rate of erroneous deprivation, it may be perfectly Constitutional to use the lower preponderance of evidence standard of proof. The standard of proof need only satisfy the "constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 754, 756 n.8 (1982).

The preponderance of evidence is also the default burden of proof in civil cases. *United States v. Balistrieri*, 981 F.2d 916, 930 (7th Cir. 1992). The shift to a heightened clear and convincing standard has been deemed warranted only in rare situations when the "government seeks to take unusual coercive action . . . . against an individual." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 253 (1989). *See, e.g.*, *Santosky*, 455 U.S. at 769–70 (termination of parental

rights); *Addington v. Tex.*, 441 U.S. 418, 425 (1979) (involuntary civil commitment); *Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 285 (1966) (deportation). Each of these examples involved the government taking away a right rather than declining to extend a right. Since there is no coercive removal of rights by the government here, it need not bear a heightened burden of proof. Count II is therefore dismissed.

Plaintiff also claims that due process requires the Board to "specify the nature, degree, immediacy, or character of the danger or threat found by the ICCLRB" (Count III). But under the revised regulations, an applicant has an opportunity to show why he does not pose a danger to himself or the public and can further seek full appellate review, which offers a safeguard against an erroneous decision by the Board that is available to all applicants. This is clearly an adequate post-deprivation remedy.

### 3. The State's Interest

Illinois' interest in the safety of its citizens is undeniably a substantial and legitimate interest, and one to which I give significant weight. Here, the state is validly concerned with restricting dangerous individuals' access to deadly weapons and minimizing potential gun violence. As discussed above, the State has taken significant steps to construct a procedure that balances these concerns with the Second Amendment rights of its citizens.

Plaintiff states, without any support, that the government's interest is always best served by permitting the full exercise of individual constitutional rights. But this is simply not true—government is always balancing competing concerns, and in some cases the calculation may legitimately support limitations on the full exercise of an individual's constitutional rights.

Based on my analysis of the above three factors, I find that the Act as modified comports with federal procedural due process requirements. Therefore, Plaintiff's facial

challenges to this claim on due process grounds—Counts I, II, and III—are dismissed.

**D. Prior Restraint**

Finally, Defendants move to dismiss Moustakas' Second Amendment claim (Count VI) for failure to state a cause of action because the claim is based on an erroneous application of a First Amendment doctrine—prior restraint—to the Second Amendment context. The Court agrees that prior restraint is not applicable here. Prior restraint is a unique doctrine in the context of First Amendment jurisprudence that is specifically aimed at preventing the "chilling effect" of censorship. *Freedman v. Maryland*, 380 U.S. 51, 60 (1965); *Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121, 1123 (7th Cir. 2001).

Moustakas argues that the discretion afforded to government officials under the Act's licensing provisions imposes a similar "chilling effect" on the exercise of Second Amendment rights. But this analogical reasoning is not enough to extend the prior restraint doctrine into Second Amendment jurisprudence, particularly when Plaintiff makes no argument for how the policy rationale behind the prohibition on prior restraint might apply to Second Amendment rights. *See Bolton*, 71 F.Supp. 3d at 817 ("The prior restraint doctrine embraces concepts unique to the First Amendment; the primary focus of the doctrine is preventing censorship and limiting the chilling effect of prior restraint on protected speech"). Moustakas has not indicated how the licensing regime raises any concerns about the censorship of expression. Therefore his Second Amendment claim based on the prior restraint argument (Count VI) is dismissed for a failure to state a cause of action.

## IV.   CONCLUSION

For the reasons stated above, I grant Defendant's Motion to Dismiss in its entirety for

Counts I-VI. This case is terminated.

ENTER:

James B. Zagel
United States District Judge

DATE: January 5, 2016